Final case this morning is number 25-1780, United States against Steven Newkirk. Mr. Romano. Good morning. May it please the court, John Romano for the United States. I'd like to reserve four minutes for rebuttal.  Thank you. We're here today because the district court effectively ignored important Section 3553A factors when it varied from a guideline range of 92 to 150. I'm mostly deaf and I would appreciate it if you could speak more to the microphone because I could not understand what you were saying. I apologize for the interruption.  All right. Thank you. We have a hearing issue, so we're all going to lean into the microphone. Mr. Romano, let's start the clock again. What did you reserve for rebuttal? Four minutes. Four minutes. Okay. So I'm going to ask Ms. Younger to put the clock at 11. Okay. Go right ahead, Mr. Romano. We're here because the district court effectively ignored several important Section 3553A factors when it varied from a guideline range of 92 to 115 months and imposed a time-served sentence of just 14 months. That sentence was too short for this offense and this offender. As the district court found, the defendant had a troubling and significant criminal history. He then illegally possessed a stolen gun loaded with hollow point bullets in close proximity to drugs and drug packaging materials. He then didn't accept responsibility. He repeatedly claimed up through and into sentencing that it wasn't his gun, even though the district court found that it clearly was, and even though he admitted it on a recorded telephone call. Mr. Romano, the government's asking us to, or itself seems to be addressing substantive reasonableness first. Our normal practice is to address procedural unreasonableness. And if we find that to remand, this is a case where in sentencing, the district court said repeatedly in imposing sentence that if there was a slip-up, if there was another mistake, if this opportunity was wasted, that the district court was going to take a much harsher approach. Why shouldn't we be following our normal practice and looking, particularly with that circumstance, looking to procedural unreasonableness first? And if we find that, remanding for the district court to consider how it wishes to proceed. Okay, two parts to that. I don't think the district court saying, well, if you violate, I'm going to do something more serious next time, really excuses the sentence being unreasonable. So that's number one. The second part of it is this court has on occasion, probably four or five, maybe six times, addressed substantive unreasonableness, even where it found procedural error. So the cases cited in our brief, Goff, Leitchock, Ramey, there's a case called Olhofsky where the court found the sentence was too high. I think this is a case where the court can do that and should do that. I found, I was rereading Tomko recently, and Judge Fisher, I thought, had a really good statement in his dissent. And I understand it's in the dissent, but I don't think it's controversial. And he said, well, reasonableness is a range, not a point. A range, by definition, has both upper and lower limits that will be exceeded in some cases. So is this a judicial economy issue, just to have it all considered at the same time? I think that, yeah, I think this is a case where the court can do that. I mean, the sentence is so low. I think the court should step in, give some guidance and say, you know what, that sentence was too low. Because I've seen, look, there's a case set in our brief, United States versus Jackson. I represented the United States as appellant three times in that case. And that's because this court found procedural error. It went back. District court imposed the same sentence again and again and again. And quite frankly, the government doesn't ordinarily appeal sentencing cases. I mean, we think a lot of sentences are low. When sentences are as low as this, feel sort of compelled to, you know, to appeal and try to get a better sentence for this defendant, but also to send a message to district courts, you know, this discretion isn't unfettered. There are limits. You're right that we've, in a number of cases, we've addressed both. Is, from the government's perspective, is there rhyme or reason to that, in which cases we do address both and in which cases we don't? It seems to me that, you know, I understand this court, this is not a sentencing court. I understand this court doesn't want to wade into sentences if it doesn't have to. There are sentences that are so low or so outside the bounds, I think this court can offer guidance and say, you know what, don't do that again. That was just simply too low or too high. It's happened when it's too high as well. It's a judicial economy thing. It's helpful to the district court. It's obviously helpful to the parties. The government doesn't want a pointless do-over where the court just imposes the same sentence. I have to be honest. I've seen, I cited a number of cases in my brief from other circuits where circuits have found sentences to be substantively unreasonable. Now, some circuits have different definitions. A lot of those cases, the district court imposes the very same sentence on remand. That's, you know, and the government doesn't appeal. It's a time-consuming process. That's not right. I mean, if this court believes the sentence is too low, I feel like it should tell that to the district court, and the district court should take that into mind and impose a longer sentence. I found this in Howard. It's a case cited in my brief. It's an 11th Circuit case. And in that case, the court said this in its conclusion. A reasonable sentence in this case should include, at the least, a non-token period of incarceration. Just some kind of statement. A non-what? Token period of incarceration. Non-token period. So some statement to the district court that, hey, look, let's look at these 3553A factors. A sentence of time served of 14 days just doesn't satisfy the seriousness of the offense, the need for deterrence. Well, one of the reasons I think we've historically, since Tomco, focused on procedural unreasonableness is because when the district court errs procedurally, that typically leads to a substantive error, right? So let's focus for a minute in this appeal on the procedural errors. What are the procedural errors? Are we just looking at general deterrence here? Is it because of the strange situation where there was an extended period of release, pending sentencing? This case was impacted by the COVID era. So tell us exactly where the procedural unreasonableness is. Sure. I think there were three procedural errors. Number one, I mean, a variance like this, I think both the Supreme Court and this court have said a significant variance like this needs to be supported by a more significant justification. I don't think the justification here was particularly robust, shall we say. Number two, when the sentence deviates so much from the guideline range, you're, of course, introducing the possibility of unwarranted sentencing disparities. The government objected on that basis. The district court's only statement was a rote recitation. I think he said, I need to avoid unwarranted sentencing disparities with no explanation whatsoever. This court has said again and again, a case I argued many years ago, Merced, is a case where, again, there was a big deviation. And the court said, you're introducing the possibility of unwarranted disparities. You need to say something. You need to address it with particular care. Here, the court didn't really address it at all. And then finally, deterrence, general deterrence specifically. And the court specifically said, this is the type of behavior that will not be tolerated in our society. That's all the court said. But then the court didn't tell us, why was a 14-day time-served sentence possibly going to further that role of general deterrence? So I think those are the three procedural errors here, not giving enough explanation, not discussing deterrence, not discussing unwarranted sentencing disparities, and then creating both of those things by giving a sentence so far below the guidelines range. You point to the 14 days. Obviously, your colleague makes the point that there was also the periods of home incarceration, home detention with monitoring. Is that a legitimate consideration by a district court in granting a variance? I think almost what I've learned is that almost anything is possibly a consideration by district courts. It doesn't make it a good one. Home detention and home confinement is obviously less severe than being in prison or being in jail over that period of time. Do I think the court could have looked at that and said, you know what? You served some time. It was home confinement or it was home detention. I'm going to give you a little bit of credit for that. Sure. I don't think it's a very strong basis. I mean, we have many cases in our reply brief that say that. And I think it's just common sense. Everyone would rather be at home than in jail. So could the court have given a couple of month variance on that basis? Sure. So the home confinement, home detention itself is not an improper consideration? No, I just don't think it would justify a variance like this. I'd also point out that in Tomko, that was a 12 to 18 month guidelines range. The defendant in that case got probation with 12 months of home detention. And the majority opinion in that case never says, oh, well, we gave him home detention. That's basically the same as imprisonment. What about the district court's kind of unusual articulation here? That because of the, not just the length of delay from COVID, but also the shortage of judges in the given district, that led to additional delay. And so that's factoring into how long the home detention takes place. Is that, is the number of judges or length of time spent on home detention a valid consideration by a district court? I mean, again, I don't think it's a very strong basis for a variance. We've had cases that have dragged on because of COVID and other reasons. Ramey, which was a case in my brief, Chief Judge Chigares wrote an opinion in that case, where the judge gave a variance because, oh, well, a long time had elapsed. And the court reversed both on procedural and substantive reasonableness grounds. Again, I think the court can consider almost anything. I don't think it's a very strong basis. It's a common tactic I saw on the district court for able defense counsel to often try to delay things to give the court a better vision of the client. You know, you give the client a chance to do better while pending sentencing. That's common, right? So, and that happened here for a much longer period of time than one would typically see. Um, the district court seemed greatly moved by how Mr. Newkirk was doing during that interregnum period. What's the government's view as to how he was doing? What was his behavior in between the conviction and the sentencing? The government's view is it's not as exemplary as the district court made it out to be. They weren't... Give us details and tell us why. Well, he tested positive, I think, for marijuana 15 times. He submitted diluted urines, I think, four times. He tested positive for something else once. I mean, are these, you know, the worst violations in the world? No, but there's a big gulf between the worst violations in the world and being exemplary. And I don't think he was exemplary by any stretch of the imagination. Those were all violations of the terms of release or not really? They weren't. I don't think they were. He never got violated for them. But the PSR and... I mean, could he have, or... I believe so, yeah. He was not allowed to do that. And is actually looking at that interregnum period, how legitimate is that to bring into consideration? Again, I think, you know, considering it, maybe. But how, again, common sense tells us that people are supposed to behave while they're on pretrial release. I mean, many courts have said that. I mean, if he hadn't behaved in a more spectacular fashion, he'd be facing new charges. So, yes, he should have behaved. And to an extent, he did. It wasn't exemplary. It certainly doesn't justify the kind of variance he got. I'd also point out that some of those statements said, oh, well, Mr. Newkirk has changed his life around, you know, since the death of his daughter. That happened years before this offense. So in this period where he's running this anti-gun organization, he's helping to raise his son, he's also committing this very serious offense. And to the extent that the judge thought maybe he's rehabilitated himself somewhat, okay. But there are other factors that need to be considered. The seriousness of the offense, the need for deterrence, the need to avoid unwarranted sentencing disparities. Thank you, Mr. Romano. We'll hear you on rebuttal. Ms. Liebesman. Take your time. No rush. Good morning, Your Honors. My name is Ruth Liebesman. And for more than six years, I have represented Stephen Newkirk. I would like to start by noting that Mr. Newkirk did have a number of positive cannabis tests. Mr. Newkirk was a medical marijuana patient because he had been shot as an innocent bystander. He had metal in his body. And he was prescribed opiates. He didn't want opiates. He's terrified of them. He's afraid he's seen people become addicted and die. So he got his medical marijuana prescription. And yes, when the pain was too much for him, he violated his release terms. And he engaged in cannabis because he will not take an opiate. Did he have a medical card for the benzos? He did have a medical card. But when he entered federal custody in 2019, he was his first probation officer, pretrial services officer. I spoke with her in depth. She would not agree to allow that. I have had other judges order pretrial suespante not to test for cannabis. I'm talking about benzodiazepine. Oh, that was a prescription. Did he have a prescription from a doctor to take that? He was not violated. He got the prescription before he reported and took it before he reported it to pretrial. But it was a legitimate prescription. It's why he wasn't violated. But I would like to address also, the government points out Merced. And Merced is very significant because Merced was a defendant who was appealing the fact that he did not get a variance. So that makes it different right there. But this court said, when a defendant seeks to argue disparate sentencing, he bears the burden of demonstrating similarity by showing that other defendants' circumstances exactly paralleled his. And a court should not consider sentences imposed on defendants in other cases in absence of such a showing by a party. And I'd like to point out that Mr. Lucerta presented a table of cases showing the range of sentences for fraud cases. So Mr. Lucerta has failed to demonstrate that any of the other defendants and a defendant has this burden. Well, I think the prosecution has the same burden. You can't put a different burden on the prosecution when they're claiming a disparate sentence than you do on a defendant. And I'd like to point out that there are five cases in the District of New Jersey where a 922g defendant got probation. So this is unusual, but it is not unique or unheard of. Many of these, there were other defendants who had similar sentencing ranges of 77 to 96 months. Why isn't the similar sentencing, those sorts of comparators, built into the guideline range itself? And when you add in enhancements for types of ammunition, for a stolen firearm, et cetera, that is all built into the range. Doesn't that take care of what you're the government's obligation to show what comparators should reasonably be? No, Your Honor, because it has not pointed out actual cases with similarities as a defendant would be required to do. This is a system of equal justice. And no defendant should be held to a higher standard for disparate sentencing than the government is. Well, it's clearly the degree, I think, it's the district court's job to explain the issue of unwarranted sentencing disparities, correct? Correct. I mean, that's right in 3553a-6. Yes, it is. Right? So let me ask you about that. Where in the sentencing transcript did the district court explain or consider whether this sentence would or would not create unwarranted sentencing disparities? The court gave very short shrift to that, and the court gave very short shrift to the idea of general deterrence. Those two factors in the court's discretion were so far outweighed by the other factors. All right. But let's, before we talk about the weighing of the other factors, let's figure out exactly what short shrift means. I want to try to nail down exactly what the district court said or didn't say. He did not say anything other than the need to avoid unwarranted sentencing disparities. And what did he say about general deterrence? With regard to general deterrence, he did not say anything on the fact of the matter. All right. So that's, let me, I'm going to state a proposition you're going to disagree with, and I'm going to give you a chance to tell me why my proposition is wrong, okay? Just putting the cards on the table here. I appreciate your candor, by the way, as to what the record said and what the record doesn't say, because too often we get dissembling from counsel. So your candor is much appreciated. It's my 40th year of practice, Your Honor. I know a little bit better than that. So this, the proposition I'm going to state is that the district court's quick statement about general deterrence, the district court's quick statement about unwarranted sentencing disparities, to me is a RETA statement. And you'll recall from Justice Breyer's opinion in the RETA case, that was a within guidelines sentence. And what Justice Breyer quipped in that opinion was the district judge must have thought there wasn't much more to say. I have always read that opinion by the Supreme Court to send a strong message to the lower courts that when the sentence is within guidelines, that sort of drive-by statement is okay. It shows that the district court is ticking the boxes and knows what to do. The converse of that proposition is that when it is not a within guidelines sentence, and in fact, when it varies remarkably from the guidelines, precisely the opposite is required of district judges, namely a fulsome explanation of all the 3553A factors, including general deterrence and unwarranted sentencing disparities. So now I'm going to give you a chance to tell me what's wrong with what I just said. Your Honor, I believe the court gave a very fulsome explanation as to the factors that were driving its sentencing decision. The fact is that this low a sentence is not going to invoke any sort of general deterrence. That is basic, you know, saying, and that's not something I would argue because it's simply not colorable. And the fact is that this is a sentencing disparity. The question is whether it's an unwarranted sentencing disparity. And Judge Martinotti, he took such a great deal of time. We had a sentencing hearing on January 24th, 2025, at the end of eight people testifying. And the judge said when we came back eight weeks later, because it took him that long to decide this sentence, he said he had every intention of imposing a carceral sentence before the first hearing. And he listened to the testimony of a lot of people to hear the changes. And Mr. Newkirk did not allocute to possessing a gun. He allocated that his roommate had a gun. He knew it was there. He had access to it. And he could use it if he wanted. This is not the same as, and yes, the government's case was that it was his gun. It was in his safe. He had denied that. He agreed to, when I first was assigned to represent him, six years ago and change, I explained to him constructive possession. And he said, I'll plead to that. I'm guilty of that. Five years later, that's what we ended up allocuting to with no plea agreement because we were not willing to agree to this 92 to 108 month range. But during this time period, Mr. Newkirk and these people came in, he ran his organization Gloves Up, Guns Down. And he had started that. We have evidence that it was around in 2018. He was arrested in 2019. So he didn't start this as a way of showing, oh, I'm turning it around. When his little daughter was killed at the age of three, it affected him horribly. And his older brother, Michael Newkirk, had been killed during a block party by a police officer who claimed to have mistaken his beer bottle for a gun. Can I just interrupt you for a minute? I'm sorry to do this, but we know the facts. We have read all that. I'm still trying to get you to respond to my principle or my premise that the farther the district judge goes from the guidelines range, the more fulsome the explanation needs to be about the factors that are implicated. And you can't, as the district judge, you can't just focus on the factors that support the sentence. You have some explaining to do. And the explaining that needed to be done was, here's why this sentencing disparity, I liked what you said, it's a severe disparity. It's a tremendous disparity, but it's not unwarranted. I would have liked to have heard the district court explain to us so we could review it why it's not unwarranted. I don't know what the district court was thinking about that. Likewise, the district court said little to nothing about general deterrence. Does the district court think that this case is so exceptional that general deterrence is irrelevant? Or does the district court think somehow general deterrence will not be adversely affected by this sentence that seems to suggest otherwise? Well, Your Honor, this sentence also is showing that somebody who has turned their life around so much, people came in to testify, Your Honor. As you know, that Mr. Newkirk's organization got gang members, opposing gang members, to sign papers that they would only box in the ring. They had to talk out their differences first. And these gangs, bloods, crypts box out in the ring and they all walk out together alive. This is something extraordinary. And then they got sponsorship from Hennessy and they put out college scholarships. And one woman came in and testified about how gloves up, guns down scholarship enables her daughter to be in college. So there are so many incredible reasons to say this man has really become somebody extraordinary. And that started in 2018. What? And that started in 2018. Actually, it started in 2013, but it was called 730 Fights. And it was in the neighborhood. 730 is the day that Mr. Newkirk's brother was killed. Well, look, I think everyone's going to agree. I think Mr. Romano is going to agree that it's better that people put gloves on and get in the ring than shoot each other. But what I don't understand is that your client was found with a gun and he has an extensive criminal record. And this charge that we're talking about now is after he had, quote, reformed and created this wonderful organization. So what that sounds like isn't a reformed person. That sounds like someone posing as a reformed person. Well, Mr. Newkirk has told me if he'd known allowing his roommate to keep a gun meant he possessed it too, he would not have permitted it. But he is guilty of it because it was there. He knew it was there. He had access to it and he could have used it. That's constructive possession. And he admitted it. But he has not admitted and will not concede to owning a gun he didn't own. And as your honor is aware from reading our brief, we had evidence of different caliber bullets that would have fit the gun found with his roommate in the other place. He took this plea to constructive possession and it was a long argument to get that. But my point is, your honor, his last jail term ended in 2011. His little girl was killed two years later almost to the day by her mother who was pregnant but they didn't know it. And so his son is not allowed to be around his mother. He's the only parent his son has and that's something that the judge is going to take into account because his mother's not allowed to see him. And this is something that was very strong in the judge's determination. And then, yes, Mr. Newkirk, the Newkirk family and the Newark police had big problems after that because there were lawsuits, there were marches. And Mr. Newkirk, he gets picked up all the time. He would get six arrests, dismiss, dismiss, dismiss,  His one arrest that didn't result in a dismissal was where a police officer claimed that he saw Mr. Newkirk walk into a restaurant with a gun in his waistband. Then he came out, saw the police, tossed the gun and ran. The guy who owned the store came in with the video showing that Mr. Newkirk did not walk in or out with the gun and he was acquitted at trial. That is why, but his incarceration then, maybe that's something that should be taken to account too, a false charge that put him in jail for quite a period of time. Perhaps the judge needs to explain more which factors overwhelmed the sentencing disparity issue because, Your Honor, to me, it's not unwarranted. It's not unique. It is unusual and we have to wonder, the government didn't object to a 922g defendant with a 77 to 96 month range getting probation. A second one, these are David Butler and J.B.N. Ortiz. Terriel Scott was convicted at trial of a 922g and got three years probation from judgeship. What was his criminal history? I don't know, Your Honor. I have not. Was it a four? It might have been, Your Honor. That would be a shock. I'm assuming that fellow's criminal history was one. No, not with a 77 to 96 month range, Your Honor. He would have had to have had a lot of enhancements, I believe, Your Honor. But I thought that the opposing counsel was saying sometimes it's about judicial economy and resources, which is the very reason why the government, in part, is asking us to look at both procedural and substantive issues here. So in other words, the decision not to challenge some of these is not quite the same as the government having taken the position that those sentences were substantively reasonable. It just didn't have the resources, perhaps, or choose to use the resources to challenge them. And so part of what it's saying here is maybe when a sentence is so far out of a reasonable range, this court should look at the procedural and the substantive issues together. What is your position on that? Well, first of all, Your Honor, I don't think it's an unreasonable range, okay? Congress has left probation as an open option. Mr. Newkirk could have been sentenced to one to five years of probation. Instead, he's doing post-release supervision. But this is not an unreasonable sentence as far as judicial economy is concerned. Perhaps judicial economy is the reason for the delay, and that inured substantially to Mr. Newkirk's benefit because it enabled him to show who he really is. But to say he's some sort of an unrepentant felon doesn't match the record. It doesn't match what he's been doing. It doesn't match what the judge heard and saw in that courtroom when a kid stands up and says, he calls me every morning to make sure I got up and I'm heading to school. He is such a pillar of his community. He makes a difference in the world he lives in, and he has a little boy that he's trying to raise. That can all be true, and everyone should hope that that's true. But what we have to review is whether this sentence was procedurally and substantively reasonable, right? Your Honor, I believe there's no question it's substantively reasonable because it fits within the normal range. There are plenty of cases- It's not within the guidelines range. I don't understand that argument at all. This is not remotely within the guidelines range. This is so far afield from the guidelines range. Right, but Your Honor, we seem to all be forgetting that the Supreme Court has said that the guidelines are one factor and they don't have overwhelming, they don't overrule everything else. We always start with the guideline range and go from there, but the fact is the guideline is one of the factors listed under 3553A. It is not the overwhelming factor. Well, if this Court's going to step away from that, then we'd want to hear your, you're basically just making more of a moral argument that from a substantive standpoint, this time served is the reasonable sentence. And your view on that is because your defendant's life has been changed and he started this group and is now living as an exemplary citizen and has a child. Well, Your Honor, he didn't start the group and change. He started this group when he finished his, while the group was there, he built it up when he got out of his last incarceration in 2011 and really took it off in 2013 after his little girl was killed. This is not something he started to show that he's a reformed person. It is something that has grown and grown over time through his efforts. He speaks to kids at the youth centers. He talks to them about the mistakes he used to make and why they shouldn't make them, about what it's cost him. Does this also turn on the seriousness of the crime? Because all those things could be true and there'd be a murder charge at stake here, right? So do those kinds of change life circumstances justify time served regardless of the seriousness of the underlying offense? Or does the underlying offenses, I guess there's some deterrent or consequence that just is unchanging because the act was committed, even if the person later changes. Or are you suggesting that this kind of post-offense conduct could ameliorate any past crime? Well, Your Honor, certainly not a murder. That's a life sentence. But Congress chose to make probation an available sentence under this. So no, not every crime. Any offense for which probation is a permissible sentence, if someone's life changes after the conduct, your position is that would justify just time served and no jail time? It depends on the factors. But yes, absolutely. But I have to reiterate that this was a constructive possession allocution. I know the government says otherwise and they say their evidence. The crime is possession. Yes. And it doesn't matter whether one is holding it in one's hand or it's on a table or your friend is holding it for you. Or it belongs to your roommate, but you have access to it. And I think those factors might have influenced the judge as well. Well, did he tell us that? Did he tell us he was influenced by that? Did he tell us that, you know, I'm not really sure this guy's even guilty, so I'm going to let him walk? Absolutely not, Your Honor. So that's why I get back to my prior proposition to you, which I'm not sure you even disagreed with or agreed with. You sort of pivoted to all of the good things that your client has done, which I recognize. But the principle is that the farther away the sentencing judge goes from the guidelines, the more fulsome the explanation needs to be. And here, as you've conceded, there was nothing meaningful said about general deterrence and there was nothing meaningful said about unwarranted sentencing. Your Honor, I disagree that a more fulsome explanation has to be given as to every factor because not every factor is going to drive a sentence. Obviously, the guideline... Right, sorry to interrupt, but I agree with you. But if the judge is going to do that, the judge literally has to say 3553A2B, general deterrence, that's not relevant in this case. 3553A6, unwarranted sentencing disparities, that's not relevant in this case. If a judge says that, then we know what we're dealing with, right? And also, 6 says unwarranted sentencing disparities. This is a warranted sentencing disparity. If you look at the substantive side, it is a warranted... Right, but he needs to explain to us why it is and he didn't, right? Your Honor, that's your call. But there is a requirement that things be explained, but the factors that he relied upon were very clearly explained and the fact that he considered the fact that Mr. Newkirk had done so much time under pretrial supervision under home, not detention, incarceration, 24-7 lockdown for the first 17 months and then home detention for 17 months where he was allowed to go to work. And that was it and he's on electronic monitoring. So this is stuff that he did explain. He explained about all of the things that Mr. Newkirk did. He talked about... Mr. Newkirk talked about all he'd learned while on pretrial release. I mean, while on pretrial release and the court commented back on that. The court commented on the fact that if you mess up, your son is gonna pay the price. He talked... Mr. Newkirk talked about his son in terms of the effect of having the bracelet on his life with his son and how it affected his son. So the judge took into account the things Mr. Newkirk said about his pretrial supervision. Thank you very much, Ms. Dingusman. Thank you. Rebuttal, Mr. Ramon. Thank you, Your Honor. I'll be brief. I just have a couple of points. To Judge Mascot's point, just because we don't appeal a sentence doesn't mean that we're happy with it or we think it's reasonable. There's limited resources and appealing these things requires a lot of effort. Need to get personal approval from the Solicitor General, so it's a long process. The second part is, this clearly was his gun. Judge Martinotti found that it was his gun. That's page 266 of the record. The recording, which I will clean up, said I had my effing gun in my safe. That's page 217. It's not a constructive possession case. This gun was in his safe in his bedroom. The third point I want to make is... Does it matter whether it was constructive or not? Not to the offense, but... I mean, if someone has a repeat criminal record, you don't want to be around guns, right? Sure, it makes him guilty either way, but I think this is worse. I mean, it was in his safe, in his bedroom. The third point, Ms. Liebsman helpfully supplied me the Lacerda case, but I think she mixed them up a little bit during her argument, mixing up Merced and Lacerda. Lacerda was a within-range sentence. This court applied a presumption of reasonableness to that sentence, and Judge Krause, as you pointed out, a sentence within the range considers unwarranted sentencing disparities. The government doesn't have to prove that a sentence within the range doesn't create unwarranted sentencing disparities. Merced, this goes to your point, Judge Hardiman. This is what Merced says at page 224. Consideration of other facts or factors won't, quote, save a sentence if the sentence is imposed without considering the risk of creating unwarranted disparities, and the sentence, in fact, creates such a risk. So the fact that you say a lot of things about a lot of other factors, which I don't think the court really did here, doesn't mean, doesn't excuse the fact that you didn't address deterrence, that you didn't address unwarranted disparities, especially where the sentence is so far outside of the range, which this one is. And my last point, Your Honor, is I would ask this court to consider reaching substantive unreasonableness. I mean, that's why we asked for it. At the very least, letting the district court know, like, no, a sentence this short won't satisfy the 3553A factors. So, Counselor, I have a question on that. I mean, because you made the point that in the past, sometimes things have gone down for procedural unreasonableness, the same sentence has been imposed. So just from your standpoint, if this court were to say there was substantive reasonableness, unreasonableness, does the government post argument here and all the points being discussed have a position on what minimal sentence there would have to be to not be substantive unreasonableness before the government would decide to bring a challenge, an appeal again? That's very hard to say. I think there's a world in which we ask for a sentence which we think is reasonable. We understand that there's probably a wider range of sentences that are reasonable. And there's probably even a wider range of sentences that we won't, you know, take the effort to appeal. I don't know if how that could, I don't know if I could answer your question in a way that makes sense. I think a reasonable sentence would involve years of imprisonment. I mean, we asked for 92 months. Anything short of a few years, I think would be unreasonable for an offense like this, given the seriousness of the offense, given the seriousness of the criminal history here. And again, we don't think that anything that warrants or warrants any variance is that strong of a factor that it could possibly justify a sentence well below the guidelines range. So I would ask this court to vacate and remand. All right. Thank you, Mr. Romano. Thank you, Ms. Liebesman. The court appreciates the argument and we'll take the matter.